IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| RUBICON US REIT, INC. et al., ) | Case No. 10-10160 (BLS) |
| ) | Joint Administration Requested |
| Debtors. ) | Hearing Date: 2/22/2010 @ 9:30 am |
| ) | Objection Deadline: 2/11/2010 |

## APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION OF SQUIRE SANDERS & DEMPSEY AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO 11 U.S.C. §§ 327(A), 329 AND 1107, *NUNC PRO TUNC* TO THE PETITION DATE

Rubicon US REIT, Inc. ("Rubicon") and its subsidiaries (each a "Debtor" and collectively, the "Debtors")[1], debtors and debtors in possession in the above-captioned cases ("Cases"), hereby submit this Application (the "Application") for entry of an order authorizing the employment and retention of Squire Sanders & Dempsey LLP ("SSD") as general counsel and reorganization and bankruptcy counsel for Debtors pursuant to sections 327(a), 329 and 1107(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), *nunc pro tunc* to the Petition Date (as defined below). In support of this Application, the Affidavit of Sandra E. Mayerson in Support of Application for an Order Authorizing the Retention of Squire Sanders & Dempsey LLP as Attorneys for Debtors and Debtors-in-Possession and Disclosure of Compensation Pursuant to 11 U.S.C. § 329 (the "Mayerson Affidavit'), is annexed hereto as Exhibit "A".

---

[1] Debtors in these Cases, along with the last four digits of each Debtor's federal tax identification number, are: Rubicon US REIT, Inc. (3829); Rubicon GSA II, LLC (1728); Rubicon GSA II Alameda, LLC (3031); Rubicon GSA II Baltimore, LLC (8907); Rubicon GSA II Beacon Station Miami, LLC (4746); Rubicon GSA II Boise BLM, LLC (6547); Rubicon GSA II Boise INS, LLC (3007); Rubicon GSA II Centennial Tacoma, LLC (9395); Rubicon GSA II Fresno, LLC (2062); Rubicon GSA II Kansas City, LLC (9685); Rubicon GSA II New Orleans, LLC (8365); Rubicon GSA II Richmond, LLC (5612); Rubicon GSA II Duncan Plaza Portland, LLC (9256); Rubicon GSA II Santa Clara, LLC (5547).

**General Background**

1. On January 20, 2010 (the "Petition Date"), Debtors commenced their respective reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, in the above-captioned bankruptcy court (the "Court").

2. Debtors are continuing in possession of their respective properties and are operating and managing their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. No trustee or statutory committee has been appointed in these Cases.

**Jurisdiction and Venue**

4. The Court has jurisdiction over these Cases pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5. Rubicon is a Delaware corporation; all other Debtors are Delaware limited liability companies. Accordingly, venue of all of the Debtors' chapter 11 cases and proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicates for the relief requested in this Application are Bankruptcy Code §§ 327(a), 329 and Bankruptcy Rule 2014(a).

7. As additional support for this Motion, Debtors refer this Court to the Declaration of Robert Saunders in Support of First Day Motions and Applications filed contemporaneously herewith.

**RELIEF REQUESTED**

8. By this Application, Debtors seek to employ and retain SSD as their general counsel and restructuring and bankruptcy counsel, pursuant to section 327(a) of the Bankruptcy Code and *nunc pro tunc* to the Petition Date.

## BASIS FOR RELIEF

9. SSD is particularly well suited to serve as Debtors' lead counsel in these Cases. With more than nine-hundred (900) attorneys in thirty (30) offices worldwide, SSD has broad-based practice groups with expertise in virtually all areas of law that may be significant in these Cases, including, for example, bankruptcy and restructuring, corporate finance, real estate and real estate finance. Moreover, SSD possesses nationally-recognized expertise in bankruptcy matters, having been actively involved in major Chapter 11 cases, including real estate bankruptcies, including, most recently, the following: *In re Dewey Ranch Hockey LLC (debtor); In re General Growth Props., Inc. (independent directors); In re Mercedes Homes* (debtor); *In re Old Carco LLC, f/k/a Chrysler (committee of dealers); In re Laughlin Ranch, LLC* (debtor); *In re Eos Airlines, Inc.* (debtor); *In re Eagle-Picher Industries* (debtor); *In re Enron Corp.* (committee); *In re WorldCom Inc.* (debtor); *In re Mesaba Aviation, Inc.* (committee); *In re Drug Emporium, Inc.* (debtor); *In re American Architectural Products Corp.* (debtor); *In re National Airlines, Inc.* (debtor); *In re Lodestar Energy, Inc.* (debtor); *In re White Motor Co.* (debtor); *In re Kaiser Group International, Inc.* (debtor); and *In re Boston Chicken, Inc.* (bank committee).

10. SSD also has obtained a detailed familiarity with Debtors' business, capital structure, and financial affairs through its pre-petition representation of the Board of Directors of Debtor and of the Voluntary Administrator for Debtors' Australia-based parent, Rubicon America Trust ("RAT"). The Voluntary Administrator of RAT engaged SSD to help plan and implement Debtors' restructuring efforts. That representation, however, ended on October 31, 2009, at which time SSD was retained directly by Debtors.

11. Debtors have chosen SSD to serve as general and bankruptcy and restructuring counsel in connection with these Cases in light of SSD's extensive expertise in large chapter 11

3

reorganizations. SSD has the necessary background to deal effectively with the full range of potential legal issues and problems that may arise in the context of these Cases. A copy of the engagement letter is annexed hereto as Exhibit B.

12. Debtors have also chosen Phillips, Goldman & Spence, P.A. ("PGS") to act as their Delaware bankruptcy counsel in these chapter 11 cases. Debtors are submitting a separate application to retain PGS. The lawyers of SSD and PGS have worked together on a variety of matters in the past, and have conferred about their respective roles in these chapter 11 cases in order to avoid duplication of efforts.

## SERVICES TO BE RENDERED

13. Debtors propose to retain SSD to render the following services:

   a. advise Debtors with respect to their powers and duties as debtors-in-possession in the continued management and operation of their business and property;

   b. attend meetings and negotiate with representatives of creditors and other parties in interest and advising and consulting on the conduct of these Cases, including all of the legal and administrative requirements of operating in Chapter 11;

   c. assist Debtors with the preparation of their Schedules of Assets and Liabilities and Statements of Financial Affairs;

   d. advise Debtors in connection with any contemplated sales of assets or business combinations, including the negotiation of asset, stock, real property, purchase, merger or joint venture agreements; formulate and implement appropriate procedures with respect to the closing of any such transactions; and counseling Debtors in connection with such transactions;

   e. advise Debtors in connection with any post-petition financing, refinancing, and cash collateral arrangements and negotiating and drafting documents relating thereto; providing advice and counsel with respect to pre-petition financing arrangements and the restructuring thereof; and negotiating and drafting documents relating thereto;

   f. advise Debtors on matters relating to the evaluation of the assumption, rejection or assignment of unexpired leases and executory contracts;

4

g. advise Debtors with respect to legal issues arising in or relating to Debtors' ordinary course of business including, without limitation, with respect to sales, leasing, construction, joint ventures; and attending meetings with Debtors' financial and turnaround advisors, board of directors and management;

h. take all necessary action to protect and preserve Debtors' estates, including the prosecution of actions on their behalf, the defense of any actions commenced against them, negotiations concerning all business matters and litigation in which Debtors are involved, and objecting to claims filed against Debtors' estates;

i. prepare, on Debtors' behalf, all motions, applications, answers, orders, reports and papers necessary to the administration of the estates;

j. negotiate and prepare, on Debtors' behalf, a plan of reorganization, disclosure statement and all related agreements and/or documents and taking any necessary action on behalf of Debtors to obtain confirmation of such plan;

k. attend meetings with third parties and participate in negotiations with respect to the above matters;

l. appear before this Court, any appellate courts and the United States Trustee and protecting the interests of Debtors' estates before such courts and the United States Trustee; and

m. perform all other necessary legal services and providing all other necessary legal advice to Debtors in connection with these Cases and their day-to-day operations.

## **DISINTERESTEDNESS**

14. The standard for a debtor-in-possession to employ attorneys as general bankruptcy counsel is set forth in sections 327(a) and 1107 of the Bankruptcy Code, as interpreted by the Third Circuit. Those sections provide that a debtor-in-possession, with the Court's approval, may employ attorneys "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons." 11 U.S.C. § 327(a); 11 U.S.C. § 1107; *see also In re BH&P, Inc.*, 949 F.2d 1300, 1314 (3d Cir. 1991) (*citing In re Star Broadcasting, Inc.*, 81 B.R. 835, 838 (Banks. D.N.J. 1988) (for counsel to be retained, "counsel must 'not hold or represent

an interest adverse to the estate' and must be a 'disinterested person.'"). A "disinterested person" is defined as one who does not have an interest materially adverse to the interest of the estate, by reason of any direct or indirect relationship with the debtor, or for any other reason. *See* 11 U.S.C. § 101(14)(e). In general, however, subject to the requirements of section 327(a) and 1107, a debtor-in-possession is entitled to the counsel of their choosing. *See, e.g., In re Vouzianas*, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

15. To the best of Debtors' knowledge, information and belief, based on the Mayerson Affidavit, other than as set forth in said Affidavit, SSD does not hold or represent an interest adverse to Debtors' estates and is a "disinterested person," as that term is defined in Bankruptcy Code section 101(14) and modified by Bankruptcy Code section 1107(b), with respect to the matters for which it is to be retained. To the best of Debtors' knowledge, information, and belief, based on the Mayerson Affidavit, other than as set forth in said Affidavit, the partners, counsel, and associates of SSD do not have any connection with Debtors or their affiliates, their creditors, their estates, any United States Bankruptcy Judge for the District of Delaware, the United States Trustee or any person employed in the office of the United States Trustee for Region 3, or any other party in interest, or their respective attorneys and accountants.

16. To the best of Debtors' knowledge, information, and belief, based on the Mayerson Affidavit, the disclosures made by SSD in the Mayerson Affidavit (regarding connections with Debtors, their creditors, any other parties in interest in these cases, their respective attorneys and accountants, any United States Bankruptcy Judge for the District of

Delaware, the United States Trustee or any person employed in the office of the United States Trustee for Region 3) satisfies the requirements of Bankruptcy Rule 2014.

17. In the event it is later determined that an existing or previously unknown connection subsequently results in a conflict with respect to a particular party or matter, Debtors' co-counsel, Phillips, Goldman & Spence, P.A., will act as sole counsel for that party or matter.

18. In view of the foregoing, SSD is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

## COMPENSATION

19. Debtors seek to retain and employ SSD on an hourly basis at rates consistent with those SSD routinely charges in comparable matters.

20. The Board has authorized a post-petition retainer (the "Post-Petition Retainer") for SSD of $300,000. On or about November 6, 2009, in accordance with SSD's engagement by Debtors, SSD received a retainer (the "First Retainer") in the amount of $400,000, of which $100,000 was a Pre-Petition retainer intended to compensate SSD for legal services rendered on behalf of Debtors from November 1, 2009, through the date of the chapter 11 filings and to cover any filing fees and expenses, and $300,000 was intended as a Post-Petition retainer. As a result of certain unexpected litigation expenses, the First Retainer had to be supplemented. Therefore, on or about November 20, 2009, SSD received an additional prepetition retainer in the amount of $200,000 (the "Second Pre-Petition Retainer").

21. Due to continued unexpected litigation-related expenses and the delay engendered by the litigation, prior to receiving the Second Retainer, the holders of a majority of Debtors' Global Senior Notes entered into an agreement with Rubicon pursuant to which Rubicon was permitted to pay SSD and Rubicon's financial advisor, Grant Thornton, an aggregate of

$250,000 each month for professional fees. As a result, on or about December 28, 2009, SSD was paid $83,333, with the balance of the $250,000 ($166,667) going to Grant Thornton. SSD applied the $83,333 to fees and expenses incurred on behalf of the Debtors during the month of November, 2009.

22. On or about January 13, 2010, SSD and Grant Thornton were paid a total of $250,000 for December, with each receiving $125,000. SSD applied the $125,000 to fees and expenses incurred on behalf of the Debtors during the month of December, 2009.

23. On or about January 15, 2010, the Board passed a resolution authorizing the payment to SSD of all prepetition fees and expenses from Retainers on hand, and authorizing SSD to receive a Post-Petition Retainer of $300,000. As SSD had unapplied funds on hand at the time of the resolution, on or about January 15, 2010, SSD was paid an additional $70,000 to create a Post-Petition Retainer of $300,000.

24. In total, SSD has, with the approval of the Board, applied approximately $503,868 from the above Retainers to payment of fees and expenses. Within thirty (30) days of the Petition Date, SSD will provide an accounting of how the Pre-Petition Retainers were applied. It is anticipated that SSD will have a nominal amount of unapplied cash from the Pre-Petition Retainers on hand after such final accounting.

25. To the extent the First Retainer and/or the Second Pre-Petition Retainer were not applied to fees and expenses in their entirety pre-petition, the remaining balance will be added to the Post-Petition Retainer.

26. As of the Petition Date, and subject to paragraphs 20 through 25 above, SSD will have been compensated for all known fees and reimbursed for all known expenses incurred before the Petition Date. The Post-Petition Retainer of $300,000 remains unapplied as of the

Petition Date. SSD reserves the right to apply certain amounts of the Pre-Petition Retainers to fees and expenses accrued before the Petition Date but not discovered or otherwise accounted for until after the Petition Date. Any remaining Pre-Petition Retainers will be added to the Post-Petition Retainers. SSD will retain the balance of the Post-Petition Retainer in trust during the pendency of these Cases to be applied to any professional fees, charges and disbursements as approved by this Court.

27. SSD will provide Debtors with monthly invoices for services rendered and disbursements incurred. During the course of these Cases, the issuance of periodic invoices will constitute requests for interim payment against the total reasonable fees and reimbursable expenses to be determined at the conclusion of these Cases. Interim and final payments are to be made on account of such invoices only in accordance with orders of the Court.

28. Currently, SSD'S hourly rates for associates, partners, and non-attorney personnel throughout the United States range from $155 for new associates to $955 for our most senior partners and from $100 for new project assistants to $325 for experienced senior paralegals, with most non-attorney billing rates falling within the range of $170 to $250 per hour. The hourly rates set forth above are subject to periodic increases in the normal course of SSD'S business, often due to the increased experience of a particular professional and changes in the prevailing legal market.

29. Consistent with SSD'S policy with respect to their other clients, SSD will continue to charge Debtors for all other services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals,

computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.

30. SSD intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in these Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the District of Delaware, and the orders of this Court. SSD will seek compensation for the services of each attorney and paraprofessional acting on behalf of Debtors in these Cases at the then-current rate charged for such services on a non-bankruptcy matter of similar importance.

31. Other than as set forth above, no arrangement is proposed between Debtors and SSD for compensation to be paid in these Cases, and SSD has not made any agreement to share its compensation with anyone, except for ordinary course disbursements to partners.

32. Debtors respectfully submit that their fee arrangement with SSD, as set forth above, is similar to fee arrangements that have been authorized in other chapter 11 cases in which SSD has rendered services, is reasonable in light of industry practice, is reflective of market rates both in and out of chapter 11 proceedings, is reasonable in light of SSD'S experience in reorganizations, and is reasonable in light of the scope of the work to be performed pursuant to its retention. Debtors believe that, given the nature of the services to be provided, the fee structure is both fair and reasonable.

33. Debtors believe that SSD is both well qualified and uniquely able to represent them effectively and efficiently in these cases.

34. The resources, capabilities and experience of SSD in advising Debtors are crucial to Debtors' successful restructuring. As such, Debtors believe that the retention of SSD *nunc*

*pro tunc* is in the best interest of Debtors, their estates, creditors and other parties-in-interest. Accordingly, Debtors request that SSD's retention as counsel be approved and made effective as of the Petition Date.

      WHEREFORE, Debtors request (a) entry of an order authorizing Debtors' retention of SSD, *nunc pro tunc* on the terms outlined in this Application and (b) such other relief as is just and proper.

Dated this 20th day of January, 2010.

                                    **RUBICON US REIT, INC. ET AL.**
                                    **Debtors and Debtors-In-Possession**

                                    By:_____
                                         Robert Saunders
                                         President

NEWYORK/123685.5

*pro tunc* is in the best interest of Debtors, their estates, creditors and other parties-in-interest. Accordingly, Debtors request that SSD's retention as counsel be approved and made effective as of the Petition Date.

WHEREFORE, Debtors request (a) entry of an order authorizing Debtors' retention of SSD, *nunc pro tunc* on the terms outlined in this Application and (b) such other relief as is just and proper.

Dated this 20th day of January, 2010.

RUBICON US REIT, INC. ET AL.
Debtors and Debtors-In-Possession

By: _____
Robert Saunders
President

NEWYORK/123685.5