**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| RUBICON US REIT, INC., <u>et al.</u>, | Case No.  10-10160 (BLS) |
| Debtors. | Jointly Administered |

**RUBICON NOTEHOLDERS' SECOND AMENDED PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY
CODE FOR RUBICON US REIT, INC. AND ITS AFFILIATED DEBTORS**

DATED:  May 10, 2010

GREENBERG TRAURIG, LLP

Dennis A. Meloro (DE Bar No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, Delaware  19801
Telephone:  (302) 661-7000
Facsimile:  (302) 661-7360
Email:      melorod@gtlaw.com

-and-

Gary D. Ticoll
Rachel Ehrlich Albanese
200 Park Avenue
New York, New York  10166
Telephone:  (212) 801-9200
Facsimile:  (212) 801-6400
Email:      ticollg@gtlaw.com
            albaneser@gtlaw.com

Counsel to the Rubicon Noteholders

# TABLE OF CONTENTS

Page

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ................................... 1

A.     Definitions ................................................................................................................. 1

Section 1.1     "Administrative Claim" ...................................................... 1
Section 1.2     "Advisors" ........................................................................... 1
Section 1.3     "Affiliate" ............................................................................ 1
Section 1.4     "Allowed" ............................................................................ 1
Section 1.5     "Bankruptcy Code" ............................................................. 2
Section 1.6     "Bankruptcy Court" ............................................................ 2
Section 1.7     "Bankruptcy Rule(s)" ......................................................... 2
Section 1.8     "Business Day" .................................................................... 2
Section 1.9     "Cash or $" .......................................................................... 2
Section 1.10    "Cause of Action" ............................................................... 2
Section 1.11    "Chancery Litigation" ........................................................ 2
Section 1.12    "Chapter 11 Cases" ............................................................ 3
Section 1.13    "Charging Lien" .................................................................. 3
Section 1.14    "Claim" ............................................................................... 3
Section 1.15    "Class" ................................................................................ 3
Section 1.16    "Collateral" ......................................................................... 3
Section 1.17    "Confirmation" ................................................................... 3
Section 1.18    "Confirmation Date" .......................................................... 3
Section 1.19    "Confirmation Hearing" ..................................................... 3
Section 1.20    "Confirmation Order" ......................................................... 3
Section 1.21    "Cure" ................................................................................. 3
Section 1.22    "Debtors" ............................................................................ 3
Section 1.23    "Disbursing Agent" ............................................................ 4
Section 1.24    "Disclosure Statement" ...................................................... 4
Section 1.25    "Disputed Claim" ............................................................... 4
Section 1.26    "Effective Date" ................................................................. 4
Section 1.27    "Entity" ............................................................................... 4
Section 1.28    "Equity Interest" ................................................................ 4
Section 1.29    "Estates" ............................................................................. 4
Section 1.30    "Exclusive Negotiating Rights Agreement" ....................... 4
Section 1.31    "Exculpated Parties" .......................................................... 4
Section 1.32    "Executory Contract" ......................................................... 4
Section 1.33    "Federal Judgment Rate" ................................................... 5
Section 1.34    "Final Effective Date" ........................................................ 5
Section 1.35    "Final Order" ...................................................................... 5
Section 1.36    "General Unsecured Claim" ................................................ 5

Chapter 11 Plan of Reorganization

Section 1.37    "Global Notes" ...................................................................5
Section 1.38    "Global Note Claim" .............................................................5
Section 1.39    "Impaired Class" ..................................................................5
Section 1.40    "Indenture" .........................................................................5
Section 1.41    "Indenture Collateral" ...........................................................5
Section 1.42    "Indenture Trustee" ...............................................................5
Section 1.43    "Indenture Trustee Fees" .......................................................5
Section 1.44    "Lien" .................................................................................5
Section 1.45    "LOI" ..................................................................................6
Section 1.46    "Mechanics' Lien Claim" .......................................................6
Section 1.47    "New Credit Agreement" .......................................................6
Section 1.48    "New Credit Agreement Collateral" ........................................6
Section 1.49    "New Rubicon Common Stock" ..............................................6
Section 1.50    "New Rubicon Notes" ...........................................................6
Section 1.51    "Other Equity Interests" ........................................................6
Section 1.52    "Other Priority Claims" .........................................................6
Section 1.53    "Person" ..............................................................................6
Section 1.54    "Petition Date" .....................................................................7
Section 1.55    "Plan" .................................................................................7
Section 1.56    "Plan Supplement" ................................................................7
Section 1.57    "Priority Tax Claim" .............................................................7
Section 1.58    "Professional" ......................................................................7
Section 1.59    "Professional Fee Claim" .......................................................7
Section 1.60    "Pro Rata Share" ..................................................................7
Section 1.61    "RAL" .................................................................................7
Section 1.62    "RAL Advisory Agreement" ..................................................7
Section 1.63    "RAML" ..............................................................................7
Section 1.64    "RAT" .................................................................................7
Section 1.65    "RAT Released Parties" .........................................................8
Section 1.66    "REIT Advisor" ....................................................................8
Section 1.67    "REIT Management Agreement" ............................................8
Section 1.68    "Released Parties" .................................................................8
Section 1.69    "Reorganized Debtors" ..........................................................8
Section 1.70    "Reorganized Rubicon" .........................................................8
Section 1.71    "RFA II" ..............................................................................8
Section 1.72    "RFA II Trustee" ..................................................................8
Section 1.73    "Rubicon" ............................................................................8
Section 1.74    "Rubicon Common Equity Interests" ......................................8
Section 1.75    "Rubicon Noteholders" ..........................................................8
Section 1.76    "Schedules" ..........................................................................8
Section 1.77    "Secured Claim" ...................................................................8
Section 1.78    "Series A Preferred Equity Interests" .....................................9
Section 1.79    "Series B Preferred Equity Interests" .....................................9
Section 1.80    "Unexpired Lease" ................................................................9
Section 1.81    "Unimpaired Class" ..............................................................9
Section 1.82    "Unsecured Claim" ...............................................................9

CHAPTER 11 PLAN OF REORGANIZATION

Section 1.83    "U.S. Trustee" ........................................................................................9

B.     Interpretation; Application of Definition and Rules of Construction...................................9

ARTICLE II PROVISION FOR PAYMENT OF UNCLASSIFIED  ADMINISTRATIVE
         CLAIMS AND PRIORITY TAX CLAIMS....................................................................10

Section 2.1     Administrative Claims................................................................................10
Section 2.2     Indenture Trustee Fees..............................................................................10
Section 2.3     Priority Tax Claims....................................................................................11

ARTICLE III CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS.........................11

Section 3.1     Classification of Claims and Equity Interests ..........................................11
Section 3.2     Voting; Presumptions ................................................................................12

ARTICLE IV PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
         INTERESTS .................................................................................................................12

Section 4.1     Class 1 – Other Priority Claims................................................................12
Section 4.2     Class 2 – Secured Claims .........................................................................13
Section 4.3     Class 3 – Mechanics' Lien Claims ............................................................13
Section 4.4     Class 4 – Global Note Claims ...................................................................13
Section 4.5     Class 5 – General Unsecured Claims .......................................................14
Section 4.6     Class 6 – Series A Preferred Equity Interests...........................................14
Section 4.7     Class 7 – Series B Preferred Equity Interests ...........................................14
Section 4.8     Class 8 – Rubicon Common Equity Interests............................................15
Section 4.9     Class 9 – Other Equity Interests ...............................................................15
Section 4.10    Reservation of Rights Regarding Claims ..................................................15

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN .........................................15

Section 5.1     Continued Corporate Existence ................................................................15
Section 5.2     Corporate Governance...............................................................................16
Section 5.3     Cancellation of Existing Securities and Agreements ...............................16
Section 5.4     Authorization and Issuance of Plan Securities .........................................17
Section 5.5     Restructuring Transactions........................................................................17
Section 5.6     Exemption from Certain Transfer Taxes...................................................17

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS .............................................17

Section 6.1     Date of Distributions .................................................................................17
Section 6.2     Disbursing Agent.......................................................................................18
Section 6.3     Withholding, Payment and Reporting Requirements................................18
Section 6.4     Setoffs and Recoupment............................................................................18
Section 6.5     Pre-Payment ..............................................................................................18
Section 6.6     No Distribution in Excess of Allowed Amounts.......................................19
Section 6.7     Allocation of Distributions ........................................................................19

Section 6.8    Distributions After Effective Date.................................................19

ARTICLE VII DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND
            DISTRIBUTIONS WITH RESPECT THERETO ..........................................19

Section 7.1    Disputed Claims/Process.................................................................19
Section 7.2    Objections to Claims ......................................................................19
Section 7.3    No Distributions Pending Allowance ..............................................20
Section 7.4    Distributions After Allowance........................................................20

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
             LEASES.................................................................................................20

Section 8.1    Assumption of Executory Contracts and Unexpired Leases ...................20
Section 8.2    Cure Rights for Executory Contracts and Unexpired Leases
              Assumed Pursuant to Plan ...............................................................21
Section 8.3    Rejected Contracts and Leases .......................................................21
Section 8.4    Rejection Damages Bar Date for Rejections Pursuant to Plan.................21
Section 8.5    Continuing Obligations Owed to Debtors .......................................22
Section 8.6    Postpetition Contracts and Leases ..................................................22

ARTICLE IX CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN............22

Section 9.1    Conditions to Occurrence of the Effective Date...............................22
Section 9.2    Notice of the Effective Date; Actions Taken on Effective Date .............23
Section 9.3    Revocation or Withdrawal of the Plan ...........................................23

ARTICLE X RETENTION OF JURISDICTION .........................................................23

Section 10.1   Scope of Retention of Jurisdiction.................................................23
Section 10.2   Failure of the Bankruptcy Court to Exercise Jurisdiction .........................25

ARTICLE XI EFFECT OF CONFIRMATION .............................................................25

Section 11.1   Vesting of Assets; Preservation of Causes of Action; Release of
              Liens ...............................................................................................25
Section 11.2   Discharge .......................................................................................26
Section 11.3   Injunction Against Interference with Plan.......................................26
Section 11.4   Releases ..........................................................................................27
Section 11.5   Exculpation .....................................................................................28

ARTICLE XII MISCELLANEOUS PROVISIONS ......................................................29

Section 12.1   Payment of Statutory Fees..............................................................29
Section 12.2   Intercompany Claims.......................................................................29
Section 12.3   Exemption from Securities Law .....................................................29
Section 12.4   Modifications and Amendments......................................................29
Section 12.5   Severability of Plan Provisions.......................................................29

Section 12.6    Successors and Assigns and Binding Effect................................................30
Section 12.7    Compromises and Settlements ...................................................................30
Section 12.8    Discharge of Debtors' Professionals .........................................................30
Section 12.9    Revocation, Withdrawal or Non-Consummation ......................................30
Section 12.10  Plan Supplement......................................................................................30
Section 12.11  Notices.....................................................................................................31
Section 12.12  Governing Law ........................................................................................31
Section 12.13  Exhibits....................................................................................................31
Section 12.14  No Admissions ........................................................................................32

CHAPTER 11 PLAN OF REORGANIZATION

The Rubicon Noteholders (defined below) hereby propose this Plan for the resolution of the outstanding Claims against and Equity Interests in Rubicon US REIT, Inc. ("**Rubicon**"), Rubicon GSA II, LLC ("**Rubicon GSA II**"), Rubicon GSA II Alameda, LLC, Rubicon GSA II Baltimore, LLC, Rubicon GSA II Beacon Station Miami, LLC, Rubicon GSA II Boise BLM, LLC, Rubicon GSA II Boise INS, LLC, Rubicon GSA II Centennial Tacoma, LLC, Rubicon GSA II Fresno, LLC, Rubicon GSA II Kansas City, LLC, Rubicon GSA II New Orleans, LLC, Rubicon GSA II Richmond, LLC, Rubicon GSA II Duncan Plaza Portland, LLC, and Rubicon GSA II Santa Clara, LLC, each a debtor and debtor in possession in the above-captioned chapter 11 cases (each, a "**Debtor**" and collectively, the "**Debtors**"). Reference is made to the Disclosure Statement for a discussion of (i) the Debtors' history, businesses, properties, results of operations, and projections for future operations and (ii) a summary and analysis of this Plan.

The Rubicon Noteholders are the proponents of the Plan (collectively, the "**Proponent**") within the meaning of section 1129 of the Bankruptcy Code.

**ARTICLE I**

**<u>DEFINED TERMS AND RULES OF INTERPRETATION</u>**

**A.    Definitions**

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both singular and plural).

**Section 1.1    "Administrative Claim"** means a Claim for any costs or expenses of administration of the Estates under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, for: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) any payment to be made under the Plan to cure a default on an assumed Executory Contract or assumed Unexpired Lease; (c) any postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in the ordinary course of their businesses; (d) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order under section 546(c)(2)(A) of the Bankruptcy Code; (e) any Allowed Professional Fee Claims in the Chapter 11 Cases; (f) the Indenture Trustee Fees and (g) any fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

**Section 1.2    "Advisors"** means each of the following: financial advisor, investment banker, accountant, appraiser, and attorney, and each of their respective employees, members, parent corporations, subsidiaries, affiliates, partners, and shareholders.

**Section 1.3    "Affiliate"** has the meaning set forth in section 101(2) of the Bankruptcy Code.

**Section 1.4    "Allowed"** means with respect to any Claim (including any Administrative Claim) or portion thereof, (i) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended, as liquidated in amount

and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) the Global Note Claims in the aggregate amount of $82,315,234.87, or (iii) any Claim expressly allowed by Final Order or hereunder.

**Section 1.5** **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, as amended from time to time, as applicable to the Chapter 11 Cases.

**Section 1.6** **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Cases or any aspect thereof.

**Section 1.7** **"Bankruptcy Rule(s)"** means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

**Section 1.8** **"Business Day"** means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Wilmington, Delaware.

**Section 1.9** **"Cash or $"** means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

**Section 1.10** **"Cause of Action"** means any and all actions (including, without limitation, any avoidance or recovery actions under sections 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code), causes of action, Claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based on whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

**Section 1.11** **"Chancery Litigation"** means that certain litigation in the Delaware Chancery Court captioned *Global Asset Capital, LLC v. Rubicon U.S. REIT, Inc.*, Case No. C.A. 5071.

**Section 1.12** **"Chapter 11 Cases"** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court and styled *In re Rubicon US REIT, Inc., et al.*, Case No. 10-10160 (BLS).

**Section 1.13** **"Charging Lien"** means any Lien or other priority in payment arising prior to the Effective Date to which the Indenture Trustee is entitled, pursuant to the Indenture, against distributions to be made to the Noteholders for payment of any Indenture Trustee Fees.

**Section 1.14** **"Claim"** has the meaning set forth in section 101(5) of the Bankruptcy Code.

**Section 1.15** **"Class"** means any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a) of the Bankruptcy Code, and as set forth in Articles II and III of the Plan.

**Section 1.16** **"Collateral"** means any property or interest in property of the Estate of any Debtor subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**Section 1.17** **"Confirmation"** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified having been satisfied or waived.

**Section 1.18** **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

**Section 1.19** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**Section 1.20** **"Confirmation Order"** means an order of the Bankruptcy Court confirming the Plan pursuant to, *inter alia*, section 1129 of the Bankruptcy Code, which, as to any matters not specifically addressed by the Plan, shall be acceptable to the Proponent in its sole discretion.

**Section 1.21** **"Cure"** means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, with interest, or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

**Section 1.22** **"Debtors"** is defined in the Introduction to this Plan.

CHAPTER 11 PLAN OF REORGANIZATION

**Section 1.23** **"Disbursing Agent"** means any entity (including any applicable Debtor or Reorganized Debtor if it acts in such capacity) in its capacity as a disbursing agent under Article VI hereof.

**Section 1.24** **"Disclosure Statement"** means that certain second amended disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**Section 1.25** **"Disputed Claim"** means (a) if no proof of claim has been filed by any applicable deadline: (i) a Claim that is listed on the Schedules as other than disputed, contingent or unliquidated, but as to which the Debtors or Reorganized Debtors or, prior to the Confirmation Date, any other party in interest, has filed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or (ii) a Claim that is listed on the Schedules as disputed, contingent or unliquidated and for which no proof of claim in a liquidated amount has been filed by any applicable deadline; or (b) if a proof of claim or request for payment of an Administrative Claim has been filed by the applicable deadline, a Claim for which an objection or request for estimation has been filed by the Debtors, the Reorganized Debtors or any other party in interest which has not been withdrawn or determined by a Final Order.

**Section 1.26** **"Effective Date"** means, with respect to each Debtor, a Business Day selected by the Proponent that is a date on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of the Plan set forth in Section 9.1 of the Plan have been satisfied or waived.

**Section 1.27** **"Entity"** means a Person, estate, trust, governmental unit, and U.S. Trustee, within the meaning of Bankruptcy Code section 101(15).

**Section 1.28** **"Equity Interest"** means the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

**Section 1.29** **"Estates"** means the estates of the Debtors in their Chapter 11 Cases, created pursuant to section 541 of the Bankruptcy Code.

**Section 1.30** **"Exclusive Negotiating Rights Agreement"** means that certain Exclusive Negotiating Rights Agreement between Global Asset Capital, LLC and the Debtors, dated as of January 15, 2010.

**Section 1.31** **"Exculpated Parties"** means the (i) Reorganized Debtors, (ii) Proponent, (iii) Indenture Trustee, and (iv) Advisors to Proponent and Indenture Trustee.

**Section 1.32** **"Executory Contract"** means a contract to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

- 4 -

**Section 1.33** **"Federal Judgment Rate"** means the interest rate allowed pursuant to section 1961 of title 29 of the United States Code, as amended, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the Petition Date.

**Section 1.34** **"Final Effective Date"** means the Effective Date for the last Debtor to emerge from bankruptcy protection.

**Section 1.35** **"Final Order"** means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, reargument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

**Section 1.36** **"General Unsecured Claim"** means any Unsecured Claim against the Debtors that is not an Other Priority Claim or a Global Note Claim.

**Section 1.37** **"Global Notes"** means the notes issued by Rubicon under the Indenture.

**Section 1.38** **"Global Note Claim"** means a Claim of a holder of Global Notes.

**Section 1.39** **"Impaired Class"** means a Class of Claims or Equity Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**Section 1.40** **"Indenture"** means that certain Amended and Restated Indenture, dated as of June 5, 2009, among Rubicon, RAML in its capacity as responsible entity for RAT, and the Indenture Trustee.

**Section 1.41** **"Indenture Collateral"** means the Collateral that was pledged by the Debtors as partial security for Rubicon's obligations under the Indenture.

**Section 1.42** **"Indenture Trustee"** means Wilmington Trust Company, as trustee under the Indenture, and its successors and assigns.

**Section 1.43** **"Indenture Trustee Fees"** means the reasonable compensation of the Indenture Trustee as provided by the Indenture, including, without limitation, reasonable attorney's fees and disbursements, incurred by the Indenture Trustee, whether prior to or after the Effective Date.

**Section 1.44** **"Lien"** means, with respect to any asset or property of the Estates (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages or hypothecation to secure payment of a debt or performance of an

obligation, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or Property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of general unsecured Creditors.

**Section 1.45** **"LOI"** means that certain letter of intent entered into by and between Rubicon and Global Asset Capital, LLC, dated as of November 4, 2009.

**Section 1.46** **"Mechanics' Lien Claim"** means, as to any Debtor, a Claim by a Person who asserts they have supplied labor or materials or improved the property of a Debtor and pursuant to which a security interest in the property of such Debtor is asserted by the holder.

**Section 1.47** **"New Credit Agreement"** means that certain Credit Agreement, partially secured by the New Credit Agreement Collateral, in the principal face amount of $50,000,000, to be entered into by Reorganized Rubicon and the Rubicon Noteholders in the form to be included in the Plan Supplement.

**Section 1.48** **"New Credit Agreement Collateral"** means certain personal property, including (i) bank accounts of Rubicon and Rubicon GSA II, and (ii) certain Equity Interests of the Reorganized Debtors and their subsidiaries.

**Section 1.49** **"New Rubicon Common Stock"** means 1,000 shares of common stock of Reorganized Rubicon authorized for issuance in accordance with the terms hereof on the Effective Date.

**Section 1.50** **"New Rubicon Notes"** means those certain notes to be issued by Rubicon pursuant to the New Credit Agreement in an aggregate principal face amount equal to $50,000,000.

**Section 1.51** **"Other Equity Interests"** means Equity Interests in any Debtor other than Rubicon.

**Section 1.52** **"Other Priority Claims"** means any and all Allowed Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

**Section 1.53** **"Person"** means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, ad hoc committee, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; provided, however, the term "Person" does not include governmental units, except that a governmental unit

that (a) acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person; (b) is a guarantor of a pension benefit payable by or on behalf of a Debtor or an Affiliate of a Debtor; or (c) is the legal or beneficial owner of an asset of (i) an employee pension benefit plan that is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986 or (ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986, shall be considered for purposes of section 1102 of the Bankruptcy Code to be a Person with respect to such asset or such benefit.

**Section 1.54** **"Petition Date"** means January 20, 2010, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

**Section 1.55** **"Plan"** means this second amended plan of reorganization under chapter 11 of the Bankruptcy Code, including the exhibits hereto, as it may be altered, amended, modified or supplemented (including the Plan Supplement) from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the terms hereof.

**Section 1.56** **"Plan Supplement"** means a supplemental appendix to the Plan to be filed at least ten (10) days prior to the Confirmation Hearing or such later date as may be established by order of the Bankruptcy Court.

**Section 1.57** **"Priority Tax Claim"** means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code; *provided, however*, that any Claims asserted by a governmental unit on account of any penalties shall not be Priority Tax Claims.

**Section 1.58** **"Professional"** means any professional employed in the Chapter 11 Cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code.

**Section 1.59** **"Professional Fee Claim"** means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and on or before the Effective Date.

**Section 1.60** **"Pro Rata Share"** means with respect to any distribution to a Class under the Plan, the ratio (expressed as a percentage) of the amount of an Allowed Claim in such Class to the aggregate amount of all Allowed Claims in such Class.

**Section 1.61** **"RAL"** means Rubicon Advisory, LLC.

**Section 1.62** **"RAL Advisory Agreement"** means that certain US REIT Advisory Services Agreement, dated as of October 25, 2004, between RAL and Rubicon.

**Section 1.63** **"RAML"** means Rubicon Asset Management Limited.

**Section 1.64** **"RAT"** means Rubicon America Trust, the holder of 100% of the Rubicon Common Equity Interests.

- 7 -

**Section 1.65 "RAT Released Parties"** means (i) RAT, (ii) RAML, and (iii) the liquidators, administrators and Advisors to RAT and RAML (but not including the Debtors' bankruptcy attorneys).

**Section 1.66 "REIT Advisor"** means an asset management company, anticipated to be KJ Rampart REIT Advisory LLC, an Affiliate of KJ Mandrake LLC.

**Section 1.67 "REIT Management Agreement"** means that certain management agreement between the Reorganized Debtors and the REIT Advisor.

**Section 1.68 "Released Parties"** means the (i) Reorganized Debtors, (ii) Proponent, (iii) Indenture Trustee, and (iv) Advisors to Proponent and Indenture Trustee.

**Section 1.69 "Reorganized Debtors"** means the Debtors as reorganized upon the Effective Date pursuant to this Plan.

**Section 1.70 "Reorganized Rubicon"** means Rubicon as reorganized upon the Effective Date pursuant to this Plan.

**Section 1.71 "RFA II"** means Rubicon Finance America II, LLC, the holder of 100% of the Series B Preferred Equity Interests.

**Section 1.72 "RFA II Trustee"** means the chapter 7 trustee for RFA II in the case entitled *In re Rubicon Finance America II, LLC*, Case No. 10-02086 (Bankr. N.D. Ill.).

**Section 1.73 "Rubicon"** is defined in the Introduction to this Plan.

**Section 1.74 "Rubicon Common Equity Interests"** means Equity Interests in Rubicon other than Series A Preferred Equity Interests and Series B Preferred Equity Interests.

**Section 1.75 "Rubicon Noteholders"** means, collectively, KJ Mandrake LLC (an Affiliate of Kaufman Jacobs LLC), Debt II RB, L.P. and Debt-U RB, L.P. (Affiliates of Starwood Capital Group Global, L.L.C) and JPMorgan Chase Funding Inc.

**Section 1.76 "Schedules"** means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as the same may have been amended, modified or supplemented from time to time.

**Section 1.77 "Secured Claim"** means any Claim (but not including a Global Note Claim) that is secured by a Lien that is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which an Estate has an interest, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the holder's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by a Debtor (with the written consent of the Proponent) or a Reorganized Debtor and the holder of such Claim. The amount of any such Claim that exceeds the value of the holder's

interest in an Estate's interests in property or the amount subject to setoff shall be treated as a General Unsecured Claim.

**Section 1.78 "Series A Preferred Equity Interests"** means any share of Series A Preferred Stock in Rubicon and any option, warrant or right, contractual or otherwise, to acquire any such interest that existed immediately prior to the Effective Date.

**Section 1.79 "Series B Preferred Equity Interests"** means any share of Series B Preferred Stock in Rubicon and any option, warrant or right, contractual or otherwise, to acquire any such interest that existed immediately prior to the Effective Date

**Section 1.80 "Unexpired Lease"** means a lease of non-residential real property to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**Section 1.81 "Unimpaired Class"** means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

**Section 1.82 "Unsecured Claim"** means a Claim arising prior to the Petition Date against a Debtor that is neither a Secured Claim nor entitled to priority under section 507 of the Bankruptcy Code or any order of the Bankruptcy Court, which Claim may be a General Unsecured Claim.

**Section 1.83 "U.S. Trustee"** means the Office of the United States Trustee for the District of Delaware.

**B.      Interpretation; Application of Definition and Rules of Construction**

Unless otherwise specified, all Section, Article, schedule, appendix, or exhibit references in the Plan are to the respective Section in, Article of, or schedule, appendix or exhibit to the Plan or Plan Supplement, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  All references to dollars are to the legal tender of the United States of America.  Unless the context otherwise requires, any capitalized term used and not defined in the Plan that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  Any non-material effectuating provisions of this Plan shall be interpreted by the Proponent in such a manner so as to be consistent with the overall purpose and intent of the Plan without further order of the Bankruptcy Court.

CHAPTER 11 PLAN OF REORGANIZATION

## ARTICLE II

## PROVISION FOR PAYMENT OF UNCLASSIFIED
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

### Section 2.1    Administrative Claims

(a)     In addition to the Global Note Claims (Class 4), subject to the filing of a motion and approval of the Bankruptcy Court, the Rubicon Noteholders shall have an Allowed Administrative Claim pursuant to section 503(b)(3)(D) for the aggregate amount of reasonable professional fees and expenses (including, without limitation, fees and expenses of attorneys, financial advisors, and any consultants) incurred by the Rubicon Noteholders in connection with or related to the Chapter 11 Cases, including, without limitation, in connection with or related to the filing of the Chapter 11 Cases, the preparation of pleadings, the conduct of discovery, the preparation for and participation in hearings before the Bankruptcy Court, and the preparation of the Plan and Disclosure Statement.

(b)     Except to the extent that an Allowed Administrative Claim has been paid prior to the Effective Date, each holder of an Allowed Administrative Claim shall be entitled to receive in full and complete settlement, release, and discharge of such Claim, payment in full in Cash of the unpaid portion of an Allowed Administrative Claim on the Effective Date.

(c)     All final requests for payment of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code must be made by application filed with the Bankruptcy Court and served on counsel to the Proponent, the Reorganized Debtors, the U.S. Trustee, and other necessary parties in interest no later than thirty (30) days after the Final Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to such applications must be filed and served on counsel to the Proponent, the Reorganized Debtors, the U.S. Trustee, and the requesting Professional or other Entity on or before the date that is fifteen (15) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application was served.

(d)     The Reorganized Debtors may, without application to or approval by the Bankruptcy Court, retain professionals and pay reasonable professional fees and expenses in connection with services rendered to them after the Effective Date.

### Section 2.2    Indenture Trustee Fees

Notwithstanding any provision contained in this Plan to the contrary, all unpaid Indenture Trustee Fees incurred through the Effective Date shall be paid in Cash on the Effective Date or as soon thereafter as is practicable by the Reorganized Debtors as Administrative Claims, without the need for application to, or approval of, any court.  To the extent that there are Indenture Trustee Fees incurred after the Effective Date, the Reorganized Debtors will pay such fees in accordance with the terms of the Indenture.  The Indenture Trustee's Charging Lien will be discharged solely upon payment in full of the Indenture Trustee Fees.  Nothing herein shall be deemed to impair, waive or discharge the Charging Lien for any fees and expenses not paid by the Reorganized Debtors.

- 10 -

To the extent that the Indenture Trustee provides services related to distributions pursuant to the Plan, the Indenture Trustee will receive from the Reorganized Debtors, without further court approval, reasonable compensation for such services and reimbursement of reasonable expenses, including, but not limited to, reasonable attorney's fees and expenses, incurred in connection with such services. These payments will be made on terms agreed to among the Indenture Trustee and the Reorganized Debtors.

### Section 2.3    Priority Tax Claims

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date, each holder of an Allowed Priority Tax Claim shall be entitled to receive in full and complete settlement, release, and discharge of such Claim, payment in Cash of the unpaid portion of an Allowed Priority Tax Claim on the Effective Date.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### Section 3.1    Classification of Claims and Equity Interests

The categories of Claims and Equity Interests set forth below classify Claims and Equity Interests for all purposes under the Plan, including for purposes of voting, confirmation and distribution pursuant to this Plan and sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Equity Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in this Plan, a Claim or Equity Interest shall be deemed classified in a Class only to the extent that such Claim or Equity Interest has not been paid, released, or otherwise settled and withdrawn prior to the Effective Date.

The following table designates the Classes of Claims against, and Equity Interests in, the Debtors and specifies which of those Classes are impaired or unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject the Plan. All of the possible Classes for the Debtors are set forth below. Certain Debtors may not have creditors in a particular Class or Classes, in which case the empty Class shall be deemed deleted from the Plan for all purposes.

| Class | Nature of Claims and Interests | Impairment | Entitled to Vote |
|-------|-------------------------------|------------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (Deemed to Accept) |
| 2 | Secured Claims | Unimpaired | No (Deemed to Accept) |
| 3 | Mechanics' Lien Claims | Unimpaired | No (Deemed to Accept) |
| 4 | Global Note Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Unimpaired | No (Deemed to Accept) |
| 6 | Series A Preferred Equity Interests | Unimpaired | No (Deemed to Accept) |

- 11 -

| 7 | Series B Preferred Equity Interests | Impaired | Yes |
| 8 | Rubicon Common Equity Interests | Impaired | No (Deemed to Reject) |
| 9 | Other Equity Interests | Unimpaired | No (Deemed to Accept) |

### Section 3.2 Voting; Presumptions

(a) *Voting.* Each holder of an Allowed Class 4 Claim and Class 7 Series B Preferred Equity Interest is entitled to vote to accept or reject the Plan. Each holder of an Allowed Class 4 Claim is a Proponent of the Plan, has consented to and accepts the Plan, and will file with the Bankruptcy Court a Consent to Plan as Plan Proponent.

(b) *Acceptance by Impaired Classes.* In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class of Claims that have accepted or rejected the Plan. Class 4 is the only Impaired Class of Claims entitled to vote and has accepted the Plan because holders of 100% in dollar amount and 100% in number of Allowed Claims in Class 4 have accepted the Plan.

(c) *Acceptance by Unimpaired Classes.* Claims and Equity Interests in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan. Classes 1 (Other Priority Claims), 2 (Secured Claims), 3 (Mechanics' Lien Claims), 5 (General Unsecured Claims), 6 (Series A Preferred Equity Interests) and 9 (Other Equity Interests) are unimpaired under the Plan and are therefore presumed to have accepted the Plan.

(d) *Rejection by Impaired Classes Receiving No Distribution.* Class 8 (Rubicon Common Equity Interests) is impaired under the Plan and shall receive no distribution under the Plan. Under section 1126(f) of the Bankruptcy Code, holders of Rubicon Common Equity Interests in Class 8 are conclusively presumed to have rejected the Plan. Therefore, the votes of holders in such Impaired Class shall not be solicited.

## ARTICLE IV

## PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS

### Section 4.1 Class 1 – Other Priority Claims

(a) *Impairment and Voting.* Class 1 is unimpaired by the Plan. Each holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b) *Distributions.* On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment of such Allowed Other Priority Claim, each Allowed Other Priority Claim

shall be unimpaired in accordance with section 1124 of the Bankruptcy Code. Allowed Other Priority Claims which are not due and payable on or before the Effective Date shall be paid thereafter in the ordinary course of business in accordance with the terms and conditions of any agreement that governs such Allowed Other Priority Claim or in accordance with the course of practice between the Debtors and such holder with respect to such Claim. Nothing in the preceding sentence shall be construed to waive the Proponent's or any other Person's right (if any) to object, on any basis, to any Claim asserted against a Debtor.

### Section 4.2    Class 2 – Secured Claims

(a)    *Impairment and Voting.*  Class 2 is unimpaired by the Plan.  Each holder of an Allowed Secured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    *Distributions.*  Except to the extent that a holder of a Secured Claim agrees to different treatment, at the sole option of the Proponent, (i) each Allowed Secured Claim shall be reinstated and rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, (ii) each holder of an Allowed Secured Claim shall receive Cash in an amount equal to such Allowed Secured Claim, including any interest on such Allowed Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Allowed Secured Claim becomes an Allowed Secured Claim or as soon thereafter as is practicable or (iii) each holder of an Allowed Secured Claim shall receive the Collateral securing its Allowed Secured Claim and any interest on such Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Allowed Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable.

### Section 4.3    Class 3 – Mechanics' Lien Claims

(a)    *Impairment and Voting.*  Class 3 is unimpaired by the Plan.  Each holder of an Allowed Mechanics' Lien Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    *Distributions*.  On the Effective Date, each holder of an Allowed Mechanics' Lien Claim (i) shall receive on account of such holder's Allowed Mechanics' Lien Claim, payment in full, in Cash, with postpetition interest calculated at the Federal Judgment Rate, and (ii) such Claim shall be discharged.  Nothing in the preceding sentence shall be construed to waive a Debtor's, the Proponent's and any other Person's right (if any) to object, on any basis, to any Claim asserted against a Debtor.  The applicable Mechanic's Lien shall be deemed released and the property relating thereto shall be free and clear of such Lien.

### Section 4.4    Class 4 – Global Note Claims

(a)    *Impairment and Voting.*  Class 4 is impaired by the Plan.  Each holder of an Allowed Global Note Claim is entitled to vote and has consented to, and accepts, the Plan.

(b)    *Distributions.*  On the Effective Date, in full and complete satisfaction of its Allowed Claim, each holder of an Allowed Global Note Claim shall be entitled to receive (or

to have its designee(s) receive) its Pro Rata Share of (x) the New Rubicon Common Stock and (y) the New Rubicon Notes (or such other shares of the New Rubicon Common Stock and New Rubicon Notes as the Rubicon Noteholders may agree).

### Section 4.5    Class 5 – General Unsecured Claims

(a)    *Impairment and Voting.*  Class 5 is unimpaired by the Plan.  Each holder of an Allowed General Unsecured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    *Distributions.*  On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of such Allowed General Unsecured Claim, each Allowed General Unsecured Claim shall be unimpaired in accordance with section 1124 of the Bankruptcy Code.  Allowed General Unsecured Claims which are not due and payable on or before the Effective Date shall be paid thereafter in the ordinary course of business in accordance with the terms and conditions of any agreement that governs such Allowed General Unsecured Claim or in accordance with the course of practice between the Debtors and such holder with respect to such Claim.  Nothing in the preceding sentence shall be construed to waive the Proponent's or any other Person's right (if any) to object, on any basis, to any Claim asserted against a Debtor.

### Section 4.6    Class 6 – Series A Preferred Equity Interests

(a)    *Impairment and Voting.*  Class 6 is unimpaired by the Plan.  Each holder of a Series A Preferred Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    *Distributions.* Each holder of a Series A Preferred Equity Interest shall retain such Equity Interest.

### Section 4.7    Class 7 – Series B Preferred Equity Interests

(a)    *Impairment and Voting.*  Class 7 is impaired by the Plan.  Each holder of a Series B Preferred Equity Interest is entitled to vote on the Plan.

(b)    *Distributions.*

(i)    *Treatment If Class 7 Accepts the Plan.*  In the event Class 7 accepts the Plan, on the Effective Date, each holder of a Series B Preferred Equity Interest shall receive its Pro Rata Share of Cash in the aggregate amount of $100,000 in full satisfaction of its Series B Preferred Equity Interests.  All Series B Preferred Equity Interests shall be extinguished as of the Effective Date.

(ii)    *Treatment If Class 7 Rejects the Plan.*  In the event Class 7 rejects the Plan, all Series B Preferred Equity Interests shall be extinguished as of the Effective Date, and the holder of the Series B Preferred Equity Interests shall neither receive nor retain any property on account of such Equity Interests under the Plan.

- 14 -

### Section 4.8   Class 8 – Rubicon Common Equity Interests

(a)   *Impairment and Voting.*  Class 8 is impaired by the Plan.  Each holder of a Rubicon Common Equity Interest is conclusively presumed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(b)   *Distributions.* All Rubicon Common Equity Interests shall be extinguished as of the Effective Date, and each holder of a Rubicon Common Equity Interest shall neither receive nor retain any property on account of such Equity Interest under the Plan.

### Section 4.9   Class 9 – Other Equity Interests

(a)   *Impairment and Voting.*  Class 9 is unimpaired by the Plan.  Each holder of an Other Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)   *Distributions.* Each holder of an Other Equity Interest shall retain such Equity Interest.

### Section 4.10   Reservation of Rights Regarding Claims

Except as otherwise explicitly provided in the Plan, nothing herein shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

### Section 5.1   Continued Corporate Existence

Except as provided herein, each Debtor will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate corporate entity, with all of the powers of a corporation under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable state law.  Except as provided herein, as of the Effective Date, all property of the estate of a Debtor, and any property acquired by a Debtor or Reorganized Debtor under the Plan, will vest in such Reorganized Debtor, free and clear of all claims, liens, charges, other encumbrances, and interests.  On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, and dispose of property and settle or compromise any claims without the supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, each Reorganized Debtor may (but is not required to) pay the charges that it incurs on or after the Effective Date for professional fees and expenses, disbursements, expenses, or related support services (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

### Section 5.2    Corporate Governance

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the members, managing member and managers of each Reorganized Debtor (other than Reorganized Rubicon) will continue to serve in such capacity for each such Reorganized Debtor unless the Proponent otherwise designates.  The Proponent will designate the initial board of directors of Reorganized Rubicon, the members of which will be disclosed in the Plan Supplement.

The officers of the Debtors immediately prior to the Effective Date will serve as the initial officers of the respective Reorganized Debtors on and after the Effective Date and in accordance with any employment and severance agreements with the Reorganized Debtors and applicable non-bankruptcy law, unless the Proponent designates replacement officers.  On and after the Effective Date, the officers of each of the Reorganized Debtors will be determined by the applicable board of directors, member or managing member (as the case may be) of each Reorganized Debtor, as applicable and in accordance with each Reorganized Debtor's governing documents.

The entry of the Confirmation Order will constitute authorization and direction for the Debtors to take or cause to be taken all corporate or other actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken will be deemed to have been authorized and approved by the Bankruptcy Court.  On the Effective Date, adoption by the Reorganized Debtors of their applicable amended articles of incorporation, partnership agreements, operating agreements or other similar documents, as applicable, copies of which are included in the Plan Supplement, will be deemed to have occurred.  All such actions will be deemed to have occurred and will be in effect from and after the Effective Date pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the partners, members, stockholders, administrators, agents, officers or directors of the Debtors.

### Section 5.3    Cancellation of Existing Securities and Agreements

Except (i) for purposes of evidencing a right to distributions under the Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed by any of the Debtors, (iii) as otherwise provided for herein, or (iv) in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article IV hereof, all Rubicon Common Equity Interests, Series B Preferred Equity Interests and any promissory notes, other instruments evidencing any Claims, other than a Claim that is being reinstated and rendered unimpaired, shall be deemed canceled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order or rule, and the obligations of the Debtors under the notes, share certificates and other agreements and instruments governing such Claims, Rubicon Common Equity Interests and Series B Preferred Equity Interests shall be discharged.  The holders of or parties to such canceled notes, shares, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, shares, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

- 16 -

### Section 5.4    Authorization and Issuance of Plan Securities

(a)    *New Rubicon Common Stock.* On the Effective Date, Reorganized Rubicon shall issue and deliver in accordance with the Plan all Plan-related securities and documents, including the New Rubicon Common Stock, without the need for any further corporate action.

(b)    *New Rubicon Notes.* On the Effective Date, Reorganized Rubicon shall issue and deliver the New Rubicon Notes in accordance with Section 4.4 herein, without the need for any further corporate action.

### Section 5.5    Restructuring Transactions

On, as of, or after the Effective Date, the Reorganized Debtors may enter into such transactions and may take such actions as may be necessary or appropriate, in accordance with any applicable state law, to effect a corporate or operational restructuring of their businesses, to otherwise simplify the overall corporate or operational structure of the Reorganized Debtors, to achieve corporate or operational efficiencies, or to otherwise improve financial results; provided that such transactions or actions are not otherwise inconsistent with the Plan or the Distributions to be made under the Plan.  Such transactions or actions may include any mergers, conversions, consolidations, restructurings, dispositions, liquidations, closures, or dissolutions, as may be determined by the Reorganized Debtors to be necessary or appropriate.

On or after the Effective Date, the Reorganized Debtors will enter into the REIT Management Agreement with the REIT Advisor.  The REIT Management Agreement will provide, among other things, for quarterly property management fees and incentives.

### Section 5.6    Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer from the Debtors to the Reorganized Debtors or any other Person or Entity pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment.  State or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

# ARTICLE VI

# PROVISIONS GOVERNING DISTRIBUTIONS

### Section 6.1    Date of Distributions

Unless otherwise provided herein, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as soon as practicable thereafter.

- 17 -

**Section 6.2      Disbursing Agent**

(a)      All distributions under this Plan shall be made by the Reorganized Debtors as Disbursing Agent or such other entity designated by the Reorganized Debtors as a Disbursing Agent on the Effective Date.

(b)      If any holder's distribution is returned as undeliverable, a reasonable effort shall be made to determine the current address of such holder.  Unless otherwise agreed between the Reorganized Debtors and the Disbursing Agent, amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors and held in trust by the Reorganized Debtors until the date that is the first (1st) anniversary of the Effective Date, after which date all unclaimed property shall revert to the Reorganized Debtors free of any restrictions thereon and the claims of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require the Debtors, the Reorganized Debtors or any Disbursing Agent to attempt to locate any holder of an Allowed Claim.

**Section 6.3      Withholding, Payment and Reporting Requirements**

In connection with the Plan and all distributions under the Plan, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding, payment, and reporting requirements.  The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. Notwithstanding any other provision of the Plan, each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit.

**Section 6.4      Setoffs and Recoupment**

The Reorganized Debtors may, but shall not be required to, set off against, or recoup from, any Claim or any Allowed Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such setoff claim or right of recoupment that the Debtors or the Reorganized Debtors may have against such holder.

**Section 6.5      Pre-Payment**

Except as otherwise provided in the Plan, any ancillary documents entered into in connection herewith or the Confirmation Order, the Reorganized Debtors (with the consent of the Proponent) shall have the right to pre-pay, without penalty, all or any portion of an Allowed Claim entitled to payment in Cash at any time; *provided, however*, that any such pre-payment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

- 18 -

### Section 6.6    No Distribution in Excess of Allowed Amounts

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim (excluding payments on account of interest due and payable pursuant to the Plan).

### Section 6.7    Allocation of Distributions

All distributions received under the Plan by holders of Claims shall be deemed to be allocated first to the principal amount of such Claim as determined for United States federal income tax purposes and then to accrued interest, if any, with respect to such Claim.

### Section 6.8    Distributions After Effective Date

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

## ARTICLE VII

## DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

### Section 7.1    Disputed Claims/Process

Holders of Claims and Equity Interests are not required to file proofs of claim with the Bankruptcy Court and shall be subject to the Bankruptcy Court process only to the extent provided in the Plan.  On and after the Effective Date, except as otherwise provided herein, all Claims will be paid in the ordinary course of business of the Reorganized Debtors.  If the Debtors dispute any Claim, such dispute shall be determined, resolved or adjudicated, as the case may be, in a manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced; *provided, however,* that the Debtors and/or the Proponent may elect, each at their sole option, to object under section 502 of the Bankruptcy Code with respect to any proof of claim filed by or on behalf of a holder of a Claim.

### Section 7.2    Objections to Claims

Except insofar as a Claim is Allowed under the Plan, the Proponent, the Debtors, and the Reorganized Debtors shall be entitled to object to any Claims.  Any objection to Claims shall be served and filed on or before the latest of (a) sixty (60) days after the Effective Date, (b) forty-five (45) days after a Claim is filed with the Bankruptcy Court or (c) such date as may be fixed by the Bankruptcy Court.

NY 240,251,261v4 5-10-10

### Section 7.3    No Distributions Pending Allowance

If a holder of a Claim files a proof of Claim and the Proponent, the Debtors, or the Reorganized Debtors object to such Claim, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### Section 7.4    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date of a Final Order allowing such Claim, the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### Section 8.1    Assumption of Executory Contracts and Unexpired Leases

Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party unless such Executory Contract or Unexpired Lease (a) was previously assumed or rejected upon motion by a Final Order, (b) previously expired or terminated pursuant to its terms, or (c) is the subject of any pending motion or dispute, including to assume, to assume on modified terms, to reject, to terminate pursuant to its terms, or to make any other disposition filed by the Debtors on or before the Confirmation Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365(a) of the Bankruptcy Code approving the assumption and/or assignment of prepetition Executory Contracts and Unexpired Leases described above, as of the Effective Date.  Notwithstanding anything to the contrary herein, the Debtors and the Reorganized Debtors reserve the right to assert that any license, franchise and partially performed contract is a property right and not an Executory Contract.  Contracts or leases entered into after the Petition Date will be performed by the Reorganized Debtors in the ordinary course of business.

Each Executory Contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, and other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such Executory Contract or unexpired lease and (b) all Executory Contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* related to such

premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of the Bankruptcy Court.

### Section 8.2    Cure Rights for Executory Contracts and Unexpired Leases Assumed Pursuant to Plan

Any monetary amounts, including interest, by which each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure.  If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of any Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order by the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; *provided, however*, that the Debtors (with the written consent of the Proponent) or Reorganized Debtors, as applicable, shall be authorized to reject any Executory Contract or Unexpired Lease to the extent the Debtors (after consultation with the Proponent) or Reorganized Debtors, conclude that the amount of the Cure obligation as determined by such Final Order, renders assumption of such Executory Contract or Unexpired Lease unfavorable to the Debtors or Reorganized Debtors.

### Section 8.3    Rejected Contracts and Leases

Except as otherwise provided herein or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, none of the Executory Contracts and Unexpired Leases to which the Debtors are a party shall be rejected hereunder; *provided, however,* that the Debtors reserve the right (with the consent of the Proponent), at any time prior to the Effective Date, to seek to reject any Executory Contract or Unexpired Lease to which a Debtor is a party.  Notwithstanding the foregoing, unless the RAL Advisory Agreement has been amended or terminated in accordance with terms satisfactory to the Proponent, the Debtors shall notify RAL on the Confirmation Date, by letter in form and substance acceptable to the Proponent in its sole discretion, of the termination of the RAL Advisory Agreement based on defaults of RAL and other good reasons, and **the RAL Advisory Agreement shall be rejected pursuant to this Section 8.3 of the Plan, effective as of the Confirmation Date.**

### Section 8.4    Rejection Damages Bar Date for Rejections Pursuant to Plan

If the rejection of an Executory Contract or Unexpired Lease pursuant to Section 8.3 of this Plan results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors or Reorganized Debtors or any of their properties unless a proof of claim is filed and served upon counsel to the Proponent and the Reorganized Debtors within ten (10) days after the date of entry of an order authorizing the rejection of such Executory Contract or Unexpired Lease or such other date as the Court may order.

### Section 8.5    Continuing Obligations Owed to Debtors

(a)    All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as Executory Contracts pursuant to the Plan and shall be assumed by the respective Debtors and Reorganized Debtors and shall continue in full force and effect.  All other insurance policies shall revest in the Reorganized Debtors.

(b)    To the extent any insurance policy under which the insurer has a continuing obligation to pay the Debtors or a third party on behalf of the Debtors is held by the Bankruptcy Court to be an Executory Contract, such insurance policy shall be treated as though it is an Executory Contract that is assumed or deemed to be an Executory Contract pursuant to section 365 of the Bankruptcy Code and Section 8.1 of the Plan.  Any and all Claims (including Cure) arising under or related to any insurance policies or related insurance agreements that are assumed by the Debtors prior to or as of the Effective Date: (i) shall not be discharged; (ii) shall be Allowed Administrative Claims; and (iii) shall be paid in full in the ordinary course of business of the Reorganized Debtors as set forth in Section 2.1 of the Plan.

(c)    Continuing obligations of third parties to the Debtors under insurance policies, contracts, or leases that have otherwise ceased to be Executory Contracts or have otherwise expired on or prior to the Effective Date, including, without limitation, continuing obligations to pay insured claims, to defend against and process claims, to refund premiums or overpayments, to provide indemnification, contribution or reimbursement, to grant rights of first refusal, to maintain confidentiality, or to honor releases, shall continue and shall be binding on such third parties notwithstanding any provision to the contrary in the Plan, unless otherwise specifically terminated by the Debtors or by Final Order of Bankruptcy Court.

### Section 8.6    Postpetition Contracts and Leases

The Debtors shall not be required to assume or reject any contract or lease entered into by the Debtors after the Petition Date.  Any such contract or lease shall continue in effect in accordance with its terms after the Effective Date, unless the Proponent or the Reorganized Debtors have obtained a Final Order of the Bankruptcy Court approving rejection or other termination of such contract or lease.  Contracts or leases entered into after the Petition Date will be performed by the Reorganized Debtors in the ordinary course of business.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### Section 9.1    Conditions to Occurrence of the Effective Date

The following conditions precedent to the occurrence of the Effective Date, with respect to a particular Debtor, must be satisfied, or waived by the Proponent, on or prior to the Effective Date:

- 22 -

(a)     with respect to each Debtor, the Confirmation Order (i) has been entered and become a Final Order, and (ii) is in form and substance reasonably satisfactory to the Proponent;

(b)     with respect to each Debtor, all actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been effected in form and substance reasonably acceptable to the Proponent; and

(c)     the RAL Advisory Agreement shall be amended, terminated, and/or rejected in a manner satisfactory to the Proponent.

### Section 9.2     Notice of the Effective Date; Actions Taken on Effective Date

(a)     The Reorganized Debtor shall file a notice of the occurrence of the Effective Date within five (5) Business Days thereafter.

(b)     Unless otherwise specifically provided in the Plan, any action required to be taken by a Debtor on the Effective Date may be taken by such Debtor or Reorganized Debtor on the Effective Date or as soon as reasonably practicable thereafter.

### Section 9.3     Revocation or Withdrawal of the Plan

The Proponent reserves the right to revoke or withdraw the Plan with respect to one or more Debtors prior to the Effective Date. If the Proponent revokes or withdraws the Plan with respect to a particular Debtor in whole prior to the Confirmation Date, then such Debtor's Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against such Debtor or any other Person or to prejudice in any manner the rights of the Debtors, the Proponent, or any Person in any further proceedings involving the Debtors. The Proponent reserves the right to withdraw the Plan as to any Debtor and proceed with confirmation of the Plan with respect to any other Debtor. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims against or Interests in such Debtor withdrawn from the Plan or any other Person or to prejudice in any manner the rights of such Debtor, the Proponent, or any Person in any further proceedings involving such withdrawn Debtor.

## ARTICLE X

## RETENTION OF JURISDICTION

### Section 10.1   Scope of Retention of Jurisdiction

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law; *provided, however*, that notwithstanding the foregoing, with respect to all civil proceedings arising in or related to the Chapter 11 Cases and the Plan, the Bankruptcy Court

shall have original but not exclusive jurisdiction, in accordance with section 1334(b) of title 28 of the United States Code), including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 327, 328, 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(c)    hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(d)    effectuate performance of and payments under the provisions of the Plan and enforce remedies upon any default under the Plan;

(e)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases or the Plan;

(f)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(g)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(h)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)    enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)    hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the exhibits to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created

- 24 -

in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(l)     enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(m)     except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

(n)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharges;

(p)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(q)     enter a final decree closing the Chapter 11 Cases.

### Section 10.2   Failure of the Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Section 10.1 of the Plan, the provisions of this Article X shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XI

## EFFECT OF CONFIRMATION

### Section 11.1   Vesting of Assets; Preservation of Causes of Action; Release of Liens

Except as otherwise provided herein or in the Confirmation Order, and pursuant to section 1123(b)(3) and section 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, all of the property and assets of the Debtors and all Causes of Action, including, without limitation, any Claims against (i) the Debtors' current and former officers, directors, attorneys and financial advisors in connection with or related to the LOI, the Chancery Litigation, the Exclusive Negotiating Rights Agreement and the filing and prosecution of the Chapter 11 Cases, and (ii) RAL and its current and former officers, directors, attorneys, and financial advisors in connection with or related to its management and/or control of the Debtors and any transactions or agreements among or between them and the Debtors including, without limitation, the RAL Advisory Agreement, shall automatically revest in the Reorganized Debtors, free and clear of all Claims, Liens and Equity Interests.   The Reorganized Debtors (directly or through the

- 25 -

Disbursing Agent) shall make all distributions under the Plan. Thereafter, each Reorganized Debtor may operate its business and may use, acquire, and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. As of the Effective Date, all such property of each Reorganized Debtor shall be free and clear of all Claims, Liens and Equity Interests, except as specifically provided in the Plan or the Confirmation Order, and the Reorganized Debtors shall receive the benefit of any and all discharges under the Plan.

### Section 11.2   Discharge

(a)   **Except as otherwise provided in Section 7.1 herein or in the Confirmation Order, to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, (x) the rights afforded herein and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and terminate all Rubicon Common Equity Interests, and (y) on the Effective Date, all existing Claims against the Debtors and all Rubicon Common Equity Interests and Series B Preferred Equity Interests shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims, Rubicon Common Equity Interests and Series B Preferred Equity Interests shall be precluded and enjoined from asserting against the Debtors, the Reorganized Debtors and the Proponent, or any of their assets or properties, any other or further Claims, debts, rights, Causes of Action, or Equity Interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.**

(b)   **Except as otherwise provided in Section 7.1 herein or in the Confirmation Order, to the fullest extent permitted by law, (x) all Persons or Entities who have held, now hold, or may hold Rubicon Common Equity Interests or Series B Preferred Equity Interests in or Claims against any of the Debtors and (y) all other parties in interest, along with their respective present and former employees, agents, officers, directors, principals, advisors and Affiliates, are permanently enjoined from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to such Claim against or Rubicon Common Equity Interests and Series B Preferred Equity Interests in the Debtors or the Reorganized Debtors, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order against the Debtors or the Reorganized Debtors, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or the Reorganized Debtors, or (iv) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors or the Reorganized Debtors, with respect to such Claim, Rubicon Common Equity Interests or Series B Preferred Equity Interests. Such injunction shall extend to any successors of the Debtors and the Reorganized Debtors and their respective properties and interest in properties.**

### Section 11.3   Injunction Against Interference with Plan; Direction to Cooperate

Upon the entry of the Confirmation Order, the Debtors, all holders of Claims and Equity Interests and other parties in interest, along with their respective present and former

employees, agents, officers, directors, principals or Advisors, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

The Debtors and their officers, directors and Advisors shall cooperate fully with the Proponent and assist the Proponent with the implementation and consummation of the Plan and the transition of management, including without limitation, by promptly complying with any reasonable requests for diligence by the Proponent and executing any and all agreements, instruments, or other documents that the Proponent reasonably requests in connection with the implementation and/or consummation of the Plan.

### Section 11.4    Releases

(a)    ***Releases by the Debtors.***

(i)    **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors, and any Person or Entity seeking to exercise the rights of the Debtors' Estates, including, without limitation, any successor to the Debtors or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive, and discharge the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized  Debtors, the Proponent, the Chapter 11 Cases, the Disclosure Statement or the Plan, and that may be asserted by or on behalf of the Debtors, the Estates, or the Reorganized Debtors against the Released Parties.**

(ii)    **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, the Reorganized Debtors, and any Person or Entity seeking to exercise the rights of the Debtors' Estates, including, without limitation, any successor to the Debtors or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive, and discharge the RAT Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized  Debtors, the Proponent, the Chapter 11 Cases, the Disclosure Statement or the Plan, and that may be**

- 27 -

asserted by or on behalf of the Debtors, the Estates, or the Reorganized Debtors against the RAT Released Parties.

(b)  *Releases by Holders of Claims and Equity Interests.*  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, **(i)** each holder of a Claim or an Equity Interest that votes in favor of the Plan (or is deemed to accept the Plan), and **(ii)** to the fullest extent permissible under applicable law, as such law may be extended or interpreted after the Effective Date, each holder of a Claim or an Equity Interest that does not vote to accept the Plan (or is deemed to reject the Plan), shall be deemed to unconditionally forever release, waive and discharge each of the Debtors and the Released Parties, from any and all claims, obligations, suits, judgments, damages demands, debts, rights, Causes of Action and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Proponent, the Chapter 11 Cases, the Disclosure Statement or the Plan; *provided*, *however*, that this Section 11.4(b) shall not operate as a waiver or release of any Causes of Action arising out of the willful misconduct, intentional fraud, or criminal liability of any such Person or Entity.

**Section 11.5   Exculpation**

(a)  Except as otherwise provided herein, on the Effective Date, the Exculpated Parties shall neither have, nor incur any liability to any holder of a Claim or an Equity Interest, the Debtors, the Reorganized Debtors, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or Affiliates, or any of their successors or assigns, for any prepetition or postpetition act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that are the result of intentional fraud, willful misconduct or criminal conduct; *provided, however*, that the foregoing exculpation shall not be deemed to, release, affect, or limit any of the rights and obligations of the Exculpated Parties from, or exculpate the Exculpated Parties with respect to, any of the Exculpated Parties' obligations or covenants arising pursuant to the Plan or the Confirmation Order.

(b)  Notwithstanding any other provision of the Plan, no holder of a Claim or an Equity Interest, the Debtors, the Reorganized Debtors, no other party in interest, none of their respective agents, employees, representatives, advisors, attorneys, or Affiliates, and none of their respective successors or assigns shall have any right of action against any of the Exculpated Parties for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the

- 28 -

**Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of intentional fraud, willful misconduct, or criminal conduct.**

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### Section 12.1    Payment of Statutory Fees

On the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

### Section 12.2    Intercompany Claims

Notwithstanding anything to the contrary herein, any debts held by a Debtor against another Debtor will be adjusted and discharged to the extent determined appropriate by the Proponent, taking into account the economic condition of the applicable Reorganized Debtor.

### Section 12.3    Exemption from Securities Law

The issuance of the New Rubicon Common Stock pursuant to the Plan shall be exempt from any securities laws registration requirements to the fullest extent permitted by section 1145 of the Bankruptcy Code.

### Section 12.4    Modifications and Amendments

The Proponent may alter, amend, or modify the Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  The Proponent shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or order of the Bankruptcy Court.  After the Confirmation Date and prior to the Effective Date, the Proponent or the Reorganized Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan.

### Section 12.5    Severability of Plan Provisions

If, prior to entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of

the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### Section 12.6   Successors and Assigns and Binding Effect

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person or Entity, including, but not limited to, the Reorganized Debtors and all other parties in interest in the Chapter 11 Cases.

### Section 12.7   Compromises and Settlements

Until the Effective Date, the Debtors and the Reorganized Debtors may, subject to approval of the Bankruptcy Court, compromise and settle Claims against the Debtors or other claims that they may have against other Persons or Entities; *provided*, *however*, that such compromise or settlement must be acceptable to the Proponent.

### Section 12.8   Discharge of Debtors' Professionals

On the Effective Date, the Debtors' Professionals and agents shall be discharged from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms.  The Professionals retained by the Debtors and the respective members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered to or on behalf of the Debtors after the Effective Date.

### Section 12.9   Revocation, Withdrawal or Non-Consummation

The Proponent reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Proponent revokes or withdraws the Plan prior to the Confirmation Date, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Equity Interests in, the Debtors, or other claims by or against the Debtors, or any Person or Entity, (ii) prejudice in any manner the rights of the Debtors, the Proponent or any Person or Entity in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by the Debtors, the Proponent, or any other Person or Entity.

### Section 12.10  Plan Supplement

The Plan Supplement shall be filed with the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing or by such later date as may be established by order of the Bankruptcy Court.  Upon such filing, all documents set forth in the Plan Supplement may be

CHAPTER 11 PLAN OF REORGANIZATION

inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. Holders of Claims or Equity Interests may obtain a copy of any document set forth in the Plan Supplement upon written request to the Proponent in accordance with Section 12.11 hereof.

### Section 12.11  Notices

Any notice, request, or demand required or permitted to be made or provided under the Plan shall be in writing and addressed as follows:

> Dennis A. Meloro (DE Bar No.  4435)
> Greenberg Traurig LLP
> 1007 North Orange Street, Suite 1200
> Wilmington, Delaware  19801
> Telephone:  (302) 661-7000
> Facsimile:  (302) 661-7360
> Email: melorod@gtlaw.com
>
> -and-
>
> Gary D. Ticoll
> Rachel Ehrlich Albanese
> Greenberg Traurig LLP
> 200 Park Avenue
> New York, New York  10166
> Telephone:  (212) 801-9200
> Facsimile:  (212) 801-6400
> Email: ticollg@gtlaw.com
>            albaneser@gtlaw.com

### Section 12.12  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Delaware shall govern the construction and implementation of the Plan and (except as may otherwise be provided in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation of the Debtors shall govern corporate governance matters with respect to the Debtors, in each case without giving effect to the principles of conflicts of law thereof.

### Section 12.13  Exhibits

All exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such exhibits shall be filed with the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing.  Copies of exhibits can be obtained upon written request to the Proponent in accordance with Section 12.11 hereof, or by downloading such exhibits from the Bankruptcy Court's website at *http://www.deb.uscourts.gov* (registration required).  To the extent any exhibit is inconsistent with the terms of the Plan,

unless otherwise ordered by the Bankruptcy Court, the non-exhibit portion of the Plan shall control.

### Section 12.14  No Admissions

Notwithstanding anything herein to the contrary, nothing contained in this Plan will be deemed an admission by the Proponent or any other Person with respect to any matter set forth herein, including, without express or implied limitation, liability on any Claim or the propriety of a Claim's classification.

NY 240,251,261v4 5-10-10

Dated: May 10 2010                     Respectfully submitted,

                                       RUBICON NOTEHOLDERS,
                                       as Proponent of the Plan

KJ Mandrake LLC                        Debt II RB, L.P. and Debt-U RB, L.P.
(an affiliate of Kaufman Jacobs LLC)   (affiliates of Starwood Capital Group Global,
                                       L.L.C)

By:    Mandrake Management Co. LLC,
       Manager                         By:    _____
                                       Name:
                                       Title:

By:    _____
Name:  Jeremy Kaufman
Title: Manager


JPMORGAN CHASE FUNDING INC.

By:    _____
Name:  Chadwick S. Parson
Title: Managing Director

Dated: May 10, 2010

Respectfully submitted,

RUBICON NOTEHOLDERS,
as Proponent of the Plan

KJ Mandrake LLC
(an affiliate of Kaufman Jacobs LLC)

By:    Mandrake Management Co. LLC,
        Manager


By:    _____
Name:  Jeremy Kaufman
Title:    Manager

Debt II RB, L.P. and Debt-U RB, L.P.
(affiliates of Starwood Capital Group Global,
L.L.C)

By:    _____
Name:  *Chris Graham*
Title:    *Managing Director*


JPMORGAN CHASE FUNDING INC.

By:    _____
Name:  Chadwick S. Parson
Title:    Managing Director

Dated: May 10, 2010                    Respectfully submitted,

                                       RUBICON NOTEHOLDERS,
                                       as Proponent of the Plan

KJ Mandrake LLC                        Debt II RB, L.P. and Debt-U RB, L.P.
(an affiliate of Kaufman Jacobs LLC)   (affiliates of Starwood Capital Group Global,
                                       L.L.C)
By:     Mandrake Management Co. LLC,
        Manager                        By:
                                       Name:
                                       Title:
By:
Name:   Jeremy Kaufman
Title:  Manager

JPMORGAN CHASE FUNDING INC.

By:     Chadwick S. P____
Name:   Chadwick S. Parson
Title:  Managing Director